**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

|  |  |  |
|---|---|---|
| EXPAND OPERATING LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No: |
| v. | ) | |
| | ) | |
| PERFEX CHEMICAL SOLUTIONS, LLC | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## <u>COMPLAINT</u>

Plaintiff, Expand Operating LLC, by and through its undersigned counsel and in support of its Complaint for Damages ("Complaint") against Perfex Chemical Solutions, LLC, respectfully avers as follows:

## <u>INTRODUCTION</u>

1.    This action arises from a defective and injurious oil-and-gas product manufactured and supplied by Perfex Chemical Solutions, LLC ("Perfex") which caused a subsurface well control event on at least one well and significant corrosion of the production casing Internal Diameter ID ("production casing") in others, resulting in Expand already incurring, and expecting to incur into the future, millions in testing and remediation costs.

2.    Corrosion is one of the most significant threats to any well's integrity, potentially leading to production shutdown, explosions, and high-risk incidents. To prevent

corrosion and scaling caused by high dissolved solids in the water and acid gases present in wells, operators inject corrosion- and scale-inhibitor chemicals into the production casing annulus. Expand utilized a chemical supplied by Perfex. Perfex recommended this chemical and specific injection rates after performing a complete risk assessment and an analysis of the gas from Expand's wells.

3.     Perfex represented that its chemical would meet Expand's needs and protect its well-casing. Indeed, Perfex advertises on its website that it is made up of "professional problem-solvers and technical consultants" who sell "outcomes, not products."[1] Instead, the chemical supplied had the exact ***opposite*** effect. It was highly corrosive and degraded the production casing, which significantly increased Expand's risk of experiencing a well control event at its wells and ultimately caused a release event.

4.     As a result, Expand now brings claims for breach of contract, breach of warranties, products liability, fraud, and negligence, and seeks all damages to which it is entitled by law, including punitive damages and attorney's fees and costs.

## I.     THE PARTIES

5.     Expand is a limited liability company registered in the State of Oklahoma with its principal address in Oklahoma. Expand is a natural gas production company that owns and operates over 2300 wells in Louisiana and was formerly known as Chesapeake Operating, L.L.C. ("Chesapeake").

---

[1] *Home*, PERFEX CHEMICAL SOLUTIONS, https://www.perfexservices.com/ (last visited Jan. 22, 2026).

6.      Perfex is a limited liability company registered in the State of Texas with its principal place of business in Pampa, Texas. Perfex is an oilfield chemical services provider that manufactures and purveys chemicals used in the oil and gas production process. It also provides oilfield services related to those chemicals.

## II.    JURISDICTION AND VENUE

7.      This Court has diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states, and the amount in controversy exceeds $75,000.

8.      Expand's sole member is Expand Energy Corporation.  Expand Energy Corporation is organized under the laws of the State of Oklahoma, and its principal place of business is in Oklahoma City, Oklahoma. As such, Expand is a citizen of the State of Oklahoma.

9.      Perfex has six members who are citizens of Texas and New York.  Joe E. Curtis, Tyson C. Curtis, Andrew C. Curtis, David W. Cory, and Jason Herrick are all natural persons domiciled in the State of Texas. Perfex's final member is Leverick Investments, a Utah Limited liability company with its membership comprised of Frederick W. Erickson, Jr. and Rejean J. Levasseur, both of whom, upon information and belief, are natural persons domiciled in the State of New York.  As a result, Perfex is a citizen of the States of Texas and New York.

10.     Courts have consistently held that venue and jurisdiction are appropriate when the parties have entered into a valid contract establishing an exclusive forum. *See, e.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14 (1985); *see also Furry v.*

*First Nat. Monetary Corp.*, 602 F. Supp. 6, 8 (W.D. Okla. 1984) ("Provisions in a contract selecting a forum act as a waiver of statutory provisions which would normally determine the appropriate forum."). On October 20, 2020, Chesapeake entered into a Master Service and Supply Agreement with Perfex, which provides that "[a]ny dispute arising out of, or relating to, [the] Agreement will be filed only in the District Court of Oklahoma County, Oklahoma, or the United States District Court for the Western District of Oklahoma." *See* Master Service and Supply Agreement for Exploration and Production between Chesapeake and Perfex attached thereto as **Exhibit 1** (the "Agreement"), at §18.8. This dispute directly arises out of the Agreement because it involves the defective and injurious products and services Perfex provided. As such, Perfex has consented to the jurisdiction and venue of this Court.

### III.    FACTS

11.     The Agreement, executed by and between Perfex and Expand, under its former name Chesapeake, effective October 20, 2020, provided that Perfex would regularly provide oilfield chemicals and services to Expand. The Agreement was to remain in effect until terminated by either party in accordance with the contractual provisions.

12.     Pursuant to the Agreement, Perfex warranted that all Materials furnished to Expand would be "merchantable, and suitable for the purpose(s) for which they are ordinarily employed or purpose(s) intended by Company and disclosed to Contractor in advance. . . ." and would "be free from defects in design, materials, performance, operation, and workmanship for a period of 24 months after being placed into service by Company."

4

Agreement, at §5.2(b). The Agreement defines "Materials" as "goods, supplies, products, raw materials, tools, equipment, machinery, property, or similar items." Agreement at §1.19.

13.     Pursuant to the Agreement, Perfex would be "liable for all resulting losses and costs arising out of, or relating to, the defect, nonconformance, or unsuitability of the Material." Agreement, at §5.2(c).

14.     Pursuant to the Agreement, Perfex warranted that it would perform the "Work with due diligence, in a good, safe, and workmanlike manner, using skilled, trained, qualified, competent, and experienced personnel, and in strict conformity with . . . any specifications and requirements contained [in the Agreement] and any applicable SOW . . . [and] generally accepted industry standards and practices." Agreement, at §5.1(a). The Agreement defines "Work" as "(a) the performance of services for [Chesapeake]; or (b) the sale, lease, or rental of Materials to [Chesapeake, necessary to fulfill [Perfex]'s obligations under this Agreement, an SOW, or an Order." Agreement, at §1.28.

15.     Perfex represented itself as a specialized purveyor of oilfield chemicals. Pursuant to this Agreement, Perfex made recommendations for appropriate chemicals after performing a complete risk assessment and analysis of the gas from Expand's wells, taking into account Expand's business needs and the purpose for which Expand sought Perfex's services. As a result of that testing, Perfex began to provide CS 4032 corrosion and scale inhibitor continuous backside chemical treatments to Expand.

16.    The CS 4032 treatments were used in over 150 wells, including the Mondello 51 HC-1 ALT well (the "Mondello 51 Well"), located in Red River Parish, Louisiana, beginning in May 2023. Perfex routinely supplied the chemical to be injected from one side of the Mondello 51 Wellhead into the production casing annulus.

17.    Just over a year later, on December 30, 2024, Expand discovered a subsurface release event at the Mondello 51 Well. The Mondello 51 Well's production, intermediate, and surface casing failed and resulted in a release of gas into the surrounding subsurface. This pressure subsequently triggered multiple other releases from nearby orphaned wells.

18.    Expand immediately engaged in remediation of the well site.  This involved restoring the ground in the surrounding area and removing and replacing the failed components.

19.    Expand quickly initiated an investigation into the incident. This investigation proceeded over several months due to the complicated work activities necessary to recover the failed components and the sequential failure analysis testing.

20.    It was determined that the casing failure initiated near the top of the casing and was caused by the loss of strength from one sided-corrosion damage of the production casing. This corrosion was so significant that it resulted in over fifty percent (50%) of wall loss of the pipe in the affected area.

21.    Until Expand conducted an investigation into the Mondello 51 Well's failure, it had no knowledge or notice of the potential for this type of failure and the resulting

damage from use of Perfex's CS 4032 product. Perfex designed, recommended, and sold the CS 4032 chemical as a corrosion and scale inhibitor. Upon information and belief, Perfex also manufactured the chemical.

22.    The corrosion in the Mondello 51 Well was located directly below the injection site of Perfex's CS 4032 chemical, visible as a streak.

23.    Given the potential risk and Expand's widespread use of the CS 4032 chemical, Expand conducted a survey of its other wells and discovered that, like the Mondello 51 Well, excessive corrosion was located near the chemicals' injection point in a significant majority of the wells treated with these chemicals.

24.    Expand's survey also revealed that wells in which it used a corrosion inhibitor from another company or did not treat with a corrosion inhibitor showed no indicators of excess corrosion. In other words, Perfex's chemical failed to perform comparably with other products in the industry and was more corrosive than if Expand had used ***no inhibitor at all***.

25.    Further testing, including testing by third-party labs, confirmed Perfex's CS 4032 chemical to be highly corrosive. In fact, the CS 4032 chemical was determined to be fifteen times more corrosive than the corrosion inhibitor from the other company.

26.    Ultimately, it was determined that the only failure mechanism that could explain the Mondello 51 Well casing incident was the highly corrosive nature of Perfex's CS 4032 corrosion inhibitor.

27.    As a result of its investigation and testing that revealed the highly corrosive effect of the CS 4032 chemical, and because CS 4302 was widely used in Expand's wells across Louisiana, Expand ceased use of Perfex's chemical and began testing the wells where the chemical was used to determine the extent of the corrosion. This investigation continues to reveal that several wells require extensive remediation to prevent similar failure.

28.    At significant cost, Expand has been forced to test and replace the casing at the Mondello 51 Well and the other wells where the CS 4032 chemical was used. The costs include, but are not limited to, those incurred for third party laboratories, the full-time dedication of Expand personnel, and the hiring of specialized contractors to replace the casing—all necessary to fix the Mondello 51 Well and prevent future incidents.

29.    After discovering the damage to its Mondello 51 Well, Expand learned that Perfex's products caused similar corrosion issues in wells in the past.

30.    Specifically, Perfex acquired the assets of PetroTech Solutions, L.L.C ("PetroTech"), now known as B&R Interests, LLC ("B&R"), in February 2022. PetroTech was sued in June 2020 for providing corrosive chemicals that caused a catastrophic wellhead blowout.

31.    Perfex never advised Expand of these past corrosion issues nor, to Expand's knowledge, made any effort to prevent the same result at Expand's wells, even when its chemical began to be injected at the Mondello 51 Well just six months after Perfex acquired

PetroTech's assets. Perfex continued to provide the chemical to Expand after acquiring knowledge of its chemicals' corrosive properties for its own profit.

32.    Expand communicated to Perfex that it had quality concerns with color, clarity and solids precipitation of the chemical. Expand also requested material compatibility and corrosion testing and Perfex declined.

33.    Expand provided notice to Perfex of the deficiencies of its product, including that its product failed to meet the warranties provided.

## IV.    CAUSES OF ACTION

## COUNT ONE: BREACH OF CONTRACT

34.    Expand re-alleges and incorporates by reference the facts and allegations set out above, as if fully set forth herein.

35.    Expand and Perfex entered into a Master Services and Supply Agreement.

36.    The sale and provision of CS 4032 to Expand is governed by the Master Services and Supply Agreement.

37.    Expand fully performed its obligations under the Master Services Agreement.

38.    Perfex, in the Agreement, made promises concerning the quality of the goods and services it would provide. *See* Agreement, at §5.1-.2.

39.    Perfex breached those promises by delivering defective goods and services that produced an effect precisely opposite to Expand's communicated needs and Perfex's representations for the chemical. Instead of the corrosion inhibitor Expand sought, Perfex

recommended and sold the CS 4032 chemical to be injected into Expand's wells resulting in extreme corrosion of the wells' production casing and a release event at the Mondello 51 Well.

40.    Testing indicates this corrosive effect was present in the chemical from the moment it was injected at the well site.

41.    Perfex's chemical not only failed to meet the expectations Expand contracted for, but it also failed to meet industry standards for a corrosion inhibitor.

42.    Expand provided Perfex reasonable notice of its breach of contract.

43.    As a direct and proximate result of Perfex's breach of its contractual promises, Expand sustained damages as described herein, including the cost to repair the Mondello 51 Well, the cost to remediate its property, the loss and/or delayed production of gas because of the Mondello 51 Well release event, and the cost to address damage to nearby orphaned wells affected by the release event. Expand also continues to sustain damages related to the remaining wells where the Perfex CS 4032 chemical was used, including the costs of testing and repairing those wells. Expand was thereby deprived of the benefits it justifiably expected to receive as a result of its contractual relationship with Perfex. Expand seeks a judgment against Perfex for all direct, indirect, consequential, and punitive damages, and costs allowed by law.

## COUNT TWO: BREACH OF EXPRESS WARRANTIES

44.    Expand re-alleges and incorporates by reference the facts and allegations set out above, as if fully set forth herein.

45.    To the extent the allegations in this Count are inconsistent with the allegations contained in any other Count, such allegations are pleaded in the alternative.

46.    Perfex is the marketer, seller, and provider of the CS 4032 chemical that caused the corrosion of Expand's production casing. Upon information and belief, Perfex is also the designer and manufacturer of the chemical.

47.    Perfex recommended the chemical at issue be injected in Expand's wells in the amounts specified by Perfex as corrosion and scale inhibitors on Expand's wells.

48.    Perfex recommended the chemical with particular knowledge of the purpose for which Expand purchased the chemical.

49.    Perfex expressly warranted that its chemical was safe, merchantable, and fit for its intended uses.

50.    Perfex expressly warranted that its chemical would be free from defects in design for at least twenty-four months after being placed into service.

51.    Perfex expressly warranted that its Work would be completed with due diligence and in accordance with generally accepted industry standards and practices.

52.    Perfex's express warranties concerning the quality of its goods and services formed the basis of the bargain for Expand, without which Expand would not have purchased Perfex's goods or services.

53.    Perfex's products and services did not conform to its express warranties. The product was unsafe, not of merchantable quality, and unfit for its intended uses and purposes.

54.     Perfex's products had precisely the opposite effect for which they were recommended, causing extreme corrosion in the production casing in Expand's wells and a release event at the Mondello 51 Well.

55.     Testing indicates this corrosive effect was present in the chemical from the moment it was injected into the production casing annulus.

56.     Perfex's goods and services fell below industry standards, performing worse than if Expand had used no corrosion inhibitor at all.

57.     Expand provided Perfex reasonable notice of the product's deficiencies.

58.     As a direct and proximate result of Perfex's breach of these express warranties, Expand sustained damages as described herein, including the cost to repair the Mondello 51 Well, the cost to remediate its property, the loss of reserves from the Mondello 51 Well release event, and the cost to address damage to nearby orphaned wells affected by the release event. Expand also continues to sustain damages related to the remaining wells where the Perfex CS 4032 chemical was used, including the costs of testing and repairing those wells. Expand seeks a judgment against Perfex for all direct, indirect, consequential, and punitive damages, and attorney's fees, and costs allowed by law.

## COUNT THREE: BREACH OF IMPLIED WARRANTIES

59.     Expand re-alleges and incorporates by reference the facts and allegations set out above, as if fully set forth herein.

60.     To the extent the allegations in this Count are inconsistent with the allegations contained in any other Count, such allegations are pleaded in the alternative.

61.    Perfex is the marketer, seller, and provider of the CS 4032 chemical that caused the corrosion of Expand's production casing. Upon information and belief, Perfex is the designer and manufacturer of the chemical as well.

62.    Perfex recommended that the chemical at issue be utilized in Expand's wells in the amounts specified by Perfex as corrosion and scale inhibitors on Expand's wells.

63.    Perfex recommended the chemical with particular knowledge of the purpose for which the chemical would be used in Expand's wells and in accordance with the results of Perfex's risk assessment and testing.

64.    Expand relied on Perfex's testing and specialized judgment to select and/or supply a chemical suitable to address its anti-corrosion needs. This formed the basis of the bargain for Expand, without which Expand would not have purchased Perfex's goods or services.

65.    Perfex impliedly warranted that its chemical was safe, merchantable, and fit for its intended uses.

66.    Perfex's products and services did not conform to its warranties. The product was unsafe, not of merchantable quality, and unfit for its intended uses and purposes.

67.    Perfex's products and services fell below industry standards, performing worse than if Expand had used no corrosion inhibitor at all.

68.    Perfex's products had precisely the opposite effect for which they were recommended, causing extreme corrosion in the production casing in Expand's wells and a release event at the Mondello 51 Well.

69.    Testing indicates this corrosive effect was present in the chemical from the moment it was injected at the well site.

70.    As a direct and proximate result of Perfex's breach of these implied warranties, Expand sustained damages as described herein, including the cost to repair the Mondello 51 Well, the cost to remediate its property, the loss of reserves from the Mondello 51 Well release event, and the cost to address damage to nearby orphaned wells affected by the release event. Expand also continues to sustain damages related to the remaining wells where the Perfex CS 4032 chemical was used, including the costs of testing and repairing those wells. Expand seeks a judgment against Perfex for all direct, indirect, consequential, and punitive damages, and costs allowed by law.

## COUNT FOUR: NEGLIGENCE

71.    Expand re-alleges and incorporates by reference the facts and allegations set out above, as if fully set forth herein.

72.    To the extent the allegations in this Count are inconsistent with the allegations contained in any other Count, such allegations are pleaded in the alternative.

73.    Perfex negligently assembled, inspected, marketed, promoted, advertised, sold, and/or distributed the CS 4032 chemical. Upon information and belief, Perfex also negligently designed, developed, and tested the chemical.

74.    Perfex was negligent in recommending the chemical and in the other services it provided in relation to that chemical's use.

14

75.    Perfex negligently failed to warn, instruct, adequately warn, or adequately instruct of the dangerous properties and design of said chemical.

76.    At all times, the chemical at issue was used for the foreseeable intended purposes for which it was designed, developed, manufactured, tested, assembled, inspected, marketed, sold, and/or distributed.

77.    Perfex owed Expand a duty to exercise reasonable care in developing, designing, manufacturing, testing, assembling, selling, inspecting, marketing and/or distributing products that were free from defects in workmanship, safe, and functional for Expand's use, and did not pose a foreseeable risk of harm. Perfex failed to exercise such reasonable care.

78.    Perfex owed Expand a duty to exercise reasonable care in recommending a product that was suited for Expand's use and did not pose a foreseeable risk of harm. Perfex failed to exercise such reasonable care.

79.    Perfex owed Expand a duty to adequately warn of the dangers inherent in the use of the product it developed, designed, manufactured, tested, inspected, assembled, sold, marketed, and/or distributed. Perfex failed to adequately warn Expand of the dangers inherent in its chemical.

80.    Perfex owed Expand a duty to supervise, train, and exercise control over its agents, contractors, employees, and representatives in the performance of their work and provision of services. Perfex failed to do so.

81.     Perfex breached each of these duties to Expand and its performance fell below standard practices in the oil and gas industry.

82.     Perfex failed to conduct adequate testing of their products with Expand's wells before recommending their use.

83.     Expand's injuries and damages are not due to any act or failure on the part of Expand.

84.     Perfex's product had precisely the opposite effect for which it was recommended and caused extreme corrosion of the production casing in Expand's wells and a release event at the Mondello 51 Well. As a direct and proximate result of Perfex's negligence, Expand sustained damages as described herein, including the cost to repair the Mondello 51 Well, the cost to remediate its property, the loss of reserves from the Mondello 51 Well release event, and the cost to address damage to nearby orphaned wells affected by the release event.  Expand also continues to sustain damages related to the remaining wells where the Perfex CS 4032 chemical was used, including the costs of testing and repairing those wells. Expand seeks a judgment against Perfex for all direct, indirect, consequential, and punitive damages, and costs allowed by law.

## COUNT FIVE: NEGLIGENT MISREPRESENTATION

85.     Expand re-alleges and incorporates by reference the facts and allegations set out above, as if fully set forth herein.

86.     To the extent the allegations in this Count are inconsistent with the allegations contained in any other Count, such allegations are pleaded in the alternative.

87.    Perfex made false statements and representations to Expand concerning the CS 4032 injected into Expand's wells, which were meant to guide Expand in conducting its business.

88.    Perfex made false statements and representations in the course of its business and in transactions in which it had a pecuniary interest.

89.    Perfex did not exercise reasonable care or competence in obtaining or communicating its representations to Expand about the product's safety and fitness to be used in Expand's wells as a corrosion and scale inhibitor.

90.    Perfex knew, and failed to inform Expand, that its products had caused similar corrosion to another operators' wells in the past.

91.    Expand relied upon Perfex's representations and was unaware of the substantial risks of the CS 4032 chemical.

92.    Expand's injuries and damages are not due to any act or failure on the part of Expand.

93.    Perfex's product had precisely the opposite effect for which it was recommended and caused extreme corrosion in the production casing in Expand's wells and a release event at the Mondello 51 Well. As a direct and proximate result of Perfex's negligence, Expand sustained damages as described herein, including the cost to repair the Mondello 51 Well, the cost to remediate its property, the loss of reserves from the Mondello 51 Well release event, and the cost to address damage to nearby orphaned wells affected by the release event.  Expand also continues to sustain damages related to the remaining

wells where the Perfex CS 4032 chemical was used, including the costs of testing and repairing those wells. Expand seeks a judgment against Perfex for all direct, indirect, consequential, and punitive damages, and costs allowed by law.

## COUNT SIX: GROSS NEGLIGENCE

94.    Expand re-alleges and incorporates by reference the facts and allegations set out above, as if fully set forth herein.

95.    To the extent the allegations in this Count are inconsistent with the allegations contained in any other Count, such allegations are pleaded in the alternative.

96.    Perfex breached each of the aforementioned duties and its performance fell below standard practices in the oil and gas industry.

97.    Expand learned that, at the time Perfex recommended and sold its chemical to Expand, it had knowledge of the potential corrosive effect of its chemicals and the substantial risk of damage to Expand's wells that would result from the use of the defective corrosion inhibitor, including the risk of a well blowout.

98.    The well control event at the Mondello 51 Well caused extensive damage to Expand's property and could have posed a danger to workers on a drilling site. Yet, Perfex continued to recommend that its chemical be utilized in Expand's wells across Louisiana for its own profit.

99.    The aforementioned actions and failures of Perfex was performed in reckless disregard of the consequences or with callous indifference to Expand's personnel and property.

18

100.    Expand's injuries and damages are not due to any act or failure on the part of Expand.

101.    Perfex's product had precisely the opposite effect for which it was recommended and caused extreme corrosion in the production casing in Expand's wells and a release event at the Mondello 51 Well. As a direct and proximate result of Perfex's negligence, Expand sustained damages as described herein, including the cost to repair the Mondello 51 Well, the cost to remediate its property, the loss of reserves from the Mondello 51 Well release event, and the cost to address damage to nearby orphaned wells affected by the release event. Expand also continues to sustain damages related to the remaining wells where the Perfex CS 4032 chemical was used, including the costs of testing and repairing those wells. Expand seeks a judgment against Perfex for all direct, indirect, consequential, and punitive damages, and costs allowed by law.

## COUNT SEVEN: STRICT PRODUCTS LIABILITY – DESIGN DEFECT

102.    Expand re-alleges and incorporates by reference the facts and allegations set out above, as if fully set forth herein.

103.    To the extent the allegations in this Count are inconsistent with the allegations contained in any other Count, such allegations are pleaded in the alternative.

104.    Perfex is the marketer, seller, and provider of the CS 4032 chemical that caused the corrosion of Expand's production casing. Upon information and belief, Perfex is also the designer and manufacturer of the CS 4032 chemical.

105.    The CS 4032 chemical was not reasonably safe for its intended use and was defective with respect to its design.

106.    The CS 4032 chemical was defective in its design in that when it left the hands of Perfex. It was not safe for its anticipated use and safer, more reasonable alternative designs existed that could have been utilized by Perfex.

107.    The CS 4032 chemical was in a defective condition when it left Perfex's possession and control.

108.    The CS 4032 chemical was defectively designed when supplied, sold, distributed, or otherwise provided to Expand.

109.    The CS 4032 chemical was unreasonably dangerous, considering the utility of the product and the risks involved in its use. The foreseeable risks associated with the product's design were more dangerous than a reasonably prudent consumer, such as Expand, would expect when the product was used for its normal and intended purpose.

110.    The CS 4032 chemical was injected into Expand's wells without any substantial changes to the condition in which it was supplied, distributed, and sold.

111.    The CS 4032 chemical failed to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by the manufacturers, and the risks and dangers of the CS 4032 chemical outweigh its benefits.

112.    The CS 4032 chemical fell below industry standards as designed, manufactured, and marketed by Perfex.

113.    The design defects in the CS 4032 chemical were not known, knowable, and/or reasonably apparent to Expand upon any reasonable examination.

114.    The defects present in the CS 4032 chemical were the direct and proximate cause of widespread damages to Expand, including the cost to repair the Mondello 51 Well, the cost to remediate its property, the loss of reserves from the Mondello 51 Well release event, and the cost to address damage to nearby orphaned wells affected by the release event. Expand also continues to sustain damages related to the remaining wells where the Perfex CS 4032 chemical was used, including the costs of testing and repairing those wells. Expand seeks a judgment against Perfex for all direct, indirect, consequential, and punitive damages, and costs allowed by law.

## COUNT EIGHT: STRICT PRODUCTS LIABILITY – FAILURE TO WARN

115.    Expand re-alleges and incorporates by reference the facts and allegations set out above, as if fully set forth herein.

116.    To the extent the allegations in this Count are inconsistent with the allegations contained in any other Count, such allegations are pleaded in the alternative.

117.    Upon information and belief, Perfex designed, set specifications for, manufactured, prepared, compounded, assembled, processed, marketed, labeled, and sold the CS 4032 chemical to consumers, including Expand, and therefore had a duty to warn of the risk of harm associated with the chemical's use and to provide adequate instructions on its safe and proper use.

118.    Upon information and belief, at the time Perfex, designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, and sold the CS 4032 chemical, the chemical was defective and presented a substantial danger to users of the chemical when put to its intended and reasonably anticipated use, namely as a corrosion inhibitor in oil and gas wells.

119.    Perfex failed to adequately warn of the CS 4032 chemical's known or reasonably scientifically knowable dangerous properties and further failed to adequately provide instructions on the chemical's safe and proper use.

120.    Perfex knew or should have known at the time it designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, and sold the CS 4032 chemical that was injected into Expand's wells that the chemical poses a significant and higher risk of corrosion and related damages than other corrosion inhibitors.

121.    Perfex knew its CS 4032 chemical presented a significant risk of corroding well casings, increasing the risk of production shut-downs, explosions, and well control events such as the release event that occurred at the Mondello 51 Well.

122.    Perfex failed to timely and reasonably warn Expand of material facts regarding the safety and efficacy of the CS 4032 chemical; no well operator, including Expand, would have used the chemical in the manner directed, had those facts been made known.

123.    The warnings, labels, and instructions provided by Perfex at all times relevant to this action were inaccurate, intentionally misleading, and misinformed and

misrepresented the risks and benefits and lack of safety and efficacy associated with the CS 4032 chemical.

124.    The risks associated with the CS 4032 chemical as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

125.    The CS 4032 chemical was defective at the time it was marketed and sold to Expand due to inadequate warnings, labeling, and/or instructions accompanying the chemical.

126.    Perfex intentionally withheld from Expand the number and nature of adverse effects associated with the use of its chemicals. Expand did not know of the substantial danger associated with the intended and foreseeable use of the chemical as described herein.

127.    The CS 4032 chemical was used in a normal, customary, intended, and foreseeable manner, namely injected into the production casing annulus to prevent corrosion. Moreover, the chemical was not used in a manner that caused the chemical to become corrosive or otherwise defective.

128.    The CS 4032 chemical was defectively designed when supplied, sold, distributed, or otherwise provided to Expand.

129.    At the time the CS 4032 chemical was injected into Expand's production casing, it was in the same condition as when it was supplied, sold, distributed, or otherwise provided to Expand.

130.    Perfex's lack of sufficient warnings and/or instructions was the direct and proximate cause of widespread damages to Expand, including the cost to repair the Mondello 51 Well, the cost to remediate its property, the loss of reserves from the Mondello 51 Well release event, and the cost to address damage to nearby orphaned wells affected by the release event. Expand also continues to sustain damages related to the remaining wells where the Perfex CS 4032 chemical was used, including the costs of testing and repairing those wells. Expand seeks a judgment against Perfex for all direct, indirect, consequential, and punitive damages, and costs allowed by law.

## COUNT NINE: FRAUDULENT MISREPRESENTATION

131.    Expand re-alleges and incorporates by reference the facts and allegations set out above, as if fully set forth herein.

132.    To the extent the allegations in this Count are inconsistent with the allegations contained in any other Count, such allegations are pleaded in the alternative.

133.    Perfex made false statements and representations to Expand concerning the CS 4032 chemical injected into Expand's wells.

134.    Perfex fraudulently concealed information with respect to the CS 4032 chemical by failing to inform Expand that Perfex's products had caused similar corrosion to another operators' wells in the past.

135.    Perfex represented through advertising, marketing materials, and negotiations with Expand that its chemicals were safe, and fraudulently withheld and concealed information about the substantial risks of using the chemical, including, but not

24

limited to, corrosion of production casing, extensive property damage, production shut-downs, explosions, and well control events such as blowouts and the release event that occurred at the Mondello 51 Well.

136.    Perfex had knowledge that the representations it made concerning the CS 4032 chemical were false.

137.    Perfex had sole access to the material facts concerning the dangers and unreasonable risks of the CS 4032 chemical.

138.    On information and belief, the concealment of information by Perfex about the risks of its chemicals was intentional.

139.    Expand relied upon Perfex's representations and was unaware of the substantial risks of the use of the CS 4032 chemical.

140.    Had Perfex not concealed this information, Expand would not have used the CS 4032 chemical.

141.    As a direct and proximate result of Perfex's actions, omissions and misrepresentations, Expand sustained damages as described herein, including the cost to repair the Mondello 51 Well, the cost to remediate its property, the loss of reserves from the Mondello 51 Well release event, and the cost to address damage to nearby orphaned wells affected by the release event. Expand also continues to sustain damages related to the remaining wells where the Perfex CS 4032 chemical was used, including the costs of testing and repairing those wells. Expand seeks a judgment against Perfex for all direct, indirect, consequential, and punitive damages, and costs allowed by law.

## COUNT TEN: FRAUDULENT INDUCEMENT

142.  Expand re-alleges and incorporates by reference the facts and allegations set out above, as if fully set forth herein.

143.  To the extent the allegations in this Count are inconsistent with the allegations contained in any other Count, such allegations are pleaded in the alternative.

144.  The aforementioned fraudulent representations induced Expand purchasing and/or entering into work orders for CS 4032 pursuant to the Agreement.

145.  Expand would not have purchased and/or entered into work orders for CS 4032 pursuant to Agreement but for the fraudulent representations.

146.  Perfex's fraudulent inducement was the direct and proximate cause of widespread damages to Expand, including the cost to repair the Mondello 51 Well, the cost to remediate its property, the loss of reserves from the Mondello 51 Well release event, and the cost to address damage to nearby wells affected by the release event. Expand also continues to sustain damages related to the remaining wells where the CS 4032 chemical was used, including the costs of testing and repairing those wells. Expand seeks a judgment against Perfex for all direct, indirect, consequential, and punitive damages, and costs allowed by law.

## DEMAND FOR JURY TRIAL

Plaintiff here by demand trial by jury on all issues.

## PRAYER FOR RELIEF

FOR THESE REASONS, Expand respectfully prays that Perfex be cited to appear and answer herein and, after due proceedings, there be, judgment in favor of Expand

against Perfex awarding the damages described above and other relief to which Expand may be justly entitled, including:

(a) Actual damages;

(b) Compensatory damages;

(c) Punitive Damages due to Perfex's gross negligence;

(d) Exemplary Damages;

(e) Attorney's fees and costs in connection with Expand's contract and express warranty claims under 12 O.S. § 939 and 12 O.S. § 936;

(c) Pre- and post-judgment interest; and

(d) All other relief to which Expand is entitled.


Dated: January 27, 2026

Respectfully submitted,

*s/Timothy J. Bomhoff*
Timothy J. Bomhoff, OBA No. 13172
**MCAFEE & TAFT A PROFESSIONAL CORPORATION**
8th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK  73102-7103
405-235-9621
405-235-0439 (FAX)
tim.bomhoff@mcafeetaft.com


and

**Kenneth M. Klemm** (LA Bar No. 22097)
*(Pro Hac Vice Motion Forthcoming)*
**Anne Derbes Wittmann** (LA Bar No. 20584)
*(Pro Hac Vice Motion Forthcoming)*
**Sarah K. Casey** (LA Bar No. 32385)
*(Pro Hac Vice Motion Forthcoming)*
**Sophia R. Cefolia** (LA Bar No. 41188)
*(Pro Hac Vice Motion Forthcoming)*
**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**
201 St. Charles Avenue, 36th Floor
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000
E-Mails: kklemm@bakerdonelson.com
       awittmann@bakerdonelson.com
       skcasey@bakerdonelson.com
       scefolia@bakerdonelson.com

and

**YETTER COLEMAN LLP**

Tracy N. LeRoy (TX Bar No. 24062847)
*(Pro Hac Vice Motion Forthcoming)*
Robert D. Woods (TX Bar No. 24093389)
*(Pro Hac Vice Motion Forthcoming)*
811 Main Street, Suite 4100
Houston, Texas 77002
Telephone: (713) 632-8000
Facsimile: (713) 632-9002
Emails: rwoods@yettercoleman.com
      tleroy@yettercoleman.com

**ATTORNEYS FOR PLAINTIFF,
EXPAND OPERATING LLC**